# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **JEANNIE RENEE HARRIS,** ) | |
|    Plaintiff, ) | Civil Action No.: 1:05cv00017 |
| ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| ) | |
| **WAL-MART,** ) | By: Pamela Meade Sargent |
|    Defendant, ) | United States Magistrate Judge |
|    Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **CHILDRESS, INC.,** ) | |
|    Third-Party Defendant. ) | |

Jeannie Renee Harris, ("Mrs. Harris"), brought this suit against defendant Wal-Mart,[1] seeking to recover damages for injuries she sustained from a fall in the parking lot of the Wal-Mart Supercenter in Bristol, Virginia. Wal-Mart filed a third-party complaint against Childress, Inc., ("Childress"), a company that Wal-Mart had contracted with to remove snow and ice from its Bristol, Virginia, parking lot. This matter is before the court on Wal-Mart's Motion For Summary Judgment, ("Wal-Mart's Motion"), (Docket Item No. 33), Childress's Motion For Summary Judgment, ("Childress's Motion"), (Docket Item No. 36), and Harris's Brief In Opposition To Defendants' Motions For Summary Judgment, ("Plaintiff's Brief"), (Docket Item No. 39.) Jurisdiction over this matter is based upon diversity of citizenship. *See* 28

---

[1] It appears the proper defendant is Wal-Mart Stores, Inc., although it does not appear that either party has moved the correct the original pleading.

-1-

U.S.C.A. §§ 1332 and 1441 (West 1993 & Supp. 2005). The motions are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

## *I. Facts*

For purposes of the court's consideration of these motions, the court must determine if there are any genuine issues of material fact. Based on the arguments and representations of the parties, and the court's review of the evidence, it does not appear that any material facts are at issue. On or about February 8, 2003, at approximately 6:30 p.m., Mrs. Harris and her husband, Jamie Allen Harris, ("Mr. Harris"), arrived at the Wal-Mart Supercenter in Bristol, Virginia. It was a clear day and the temperature had risen into the 50s, with no precipitation. Although there had been a light snowfall the day before, the roads were free of any ice or snow. Mrs. Harris remembers that at the time the couple reached Wal-Mart, it was cold but not below freezing temperature. The couple was traveling in Mr. Harris's pick-up truck, with Mr. Harris driving and Mrs. Harris as the only passenger. It was dark outside, so Mr. Harris had the headlights of his vehicle on. Mr. Harris entered the parking lot from a rear entrance and turned down a middle row to park the vehicle. As he drove, neither Mrs. Harris nor Mr. Harris noticed any ice or snow in the parking lot other than some accumulated piles of snow near the light posts. In fact, Wal-Mart had an on-call agreement with Childress and had requested Childress the day before to remove any snow and ice in the parking lot and to distribute salt. Childress had cleared the parking lot of snow and ice and piled the accumulated snow in various areas away from those commonly used for parking. According to the store manager,

Greg Cunningham, it was the store's policy to spot-treat any known remaining icy spots with salt, or if the case was severe enough, to have the contractor return to perform additional snow removal and salt distribution services.

When the couple was approximately 20 to 25 parking spaces from the entrance of the store, an available parking space presented itself. As Mr. Harris began to turn the vehicle into the parking space, an unidentified woman pushed a shopping cart into the middle of the parking space, preventing Mr. Harris from entirely pulling his vehicle into the spot. Therefore, Mrs. Harris exited the vehicle in hopes of removing the shopping cart from the parking place to allow Mr. Harris to pull into the spot completely. Mrs. Harris was wearing hiking boots. As Mrs. Harris walked, she looked in front of her, but did not see nor feel any snow, ice or moisture of any kind, except for seeing the accumulated piles of snow that were near light posts – the nearest being a few parking spots away from her location. Mrs. Harris also did not notice any discoloration on the pavement. Within her first few steps, while she was still beside the vehicle, Mrs. Harris slipped, causing her to fall backwards and land on the ground. Mr. Harris immediately exited the vehicle to aid his wife, while an unidentified couple retrieved a deputy sheriff that was in the parking lot. The deputy sheriff called the rescue squad, and a Wal-Mart employee brought out a wheelchair from the store so that Mrs. Harris would not have to remain on the ground.

After her fall, Mrs. Harris noticed that there was a two- or three-foot wide patch of ice that had caused her to fall. The ice was not visible. Mrs. Harris surmised that she probably would not have seen the patch of ice even if she had been looking directly at the ground because of nightfall. Both Mr. and Mrs. Harris described the

patch of ice as "black ice." Mr. Harris stated that the patch of ice, on which Mrs. Harris slipped, was comprised of smaller patches of ice. Mr. Harris further estimated that the circumference of the patch of ice, which Mrs. Harris had fallen on, was the size of a grapefruit, but that one could have seen it if he/she had looked directly at the ground. Mr. Harris noted no liquid water surrounding the patch of ice that Mrs. Harris had fallen on. The then assistant manager of the store, Jeffrey Fullen, who observed the spot where Mrs. Harris fell and took pictures of the scene following Mrs. Harris's fall, described the spot as containing damp areas but no visible ice.

Neither Mr. nor Mrs. Harris knew what caused the patch of ice to form, for how long it had been present or whether Wal-Mart was aware of the presence of ice prior to Mrs. Harris's fall. An acquaintance of the Harrises, Melvin A. Kestner, ("Kestner"), was in the parking lot during this same time period and observed several icy spots in the parking lot and found the parking lot to have been "treacherous and slippery." However, according to Fullen and Cunningham, no employees of Wal-Mart were aware of any ice in the parking lot, had received any complaints about ice in the parking lot or had learned of similar incidents that occurred in the parking lot or store that day.

When the rescue squad arrived, Mrs. Harris was placed in the ambulance, and Mr. Harris completed an accident report for Wal-Mart. Once at the hospital, Mrs. Harris learned that she had broken her left ankle in three spots and had dislocated it, for which she would require surgery. Surgery was performed that night, and a plate and seven screws were placed in Mrs. Harris's ankle. After wearing a series of casts that lasted six weeks and a two-week period of physical therapy, Mrs. Harris's doctor

released her from his care and placed no restrictions on Mrs. Harris's activities. Mrs. Harris missed three weeks of work because of her injury. To date, Mrs. Harris complains of sensitivity to contact with her ankle because of the plate and an inability to stand or walk for long periods of time.

## *II. Procedural History*

Mrs. Harris filed her motion for judgment in the Circuit Court for Washington County, Virginia. In response, Wal-Mart removed the case to the United States District Court for the Western District of Virginia in Abingdon, Virginia, and filed its answer to the motion for judgment on February 28, 2005, along with a third-party complaint against Childress. In its third-party complaint, Wal-Mart requests contribution plus interest, costs and attorney's fees from Childress if Wal-Mart is held liable to Mrs. Harris in this action. In the alternative, if Wal-Mart is found liable to Mrs. Harris, it seeks contribution from Childress plus interest, costs and attorney's fees.

On January 5, 2006, Wal-Mart filed its pending motion for summary judgment, along with the affidavits of Fuller and Cunningham and the transcripts of depositions of Mrs. and Mr. Harris proffered to establish that Wal-Mart did not have actual or constructive notice of the hazardous condition or, in the alternative, that Wal-Mart is entitled to contribution from Childress. On January 10, 2006, Childress filed its pending motion for summary judgment in addition to an affidavit to prove that it has no duty to indemnify Wal-Mart nor any liability for contribution. In turn, Mrs. Harris filed a brief in opposition and an affidavit by Kestner on January 18, 2006, in support

of her contention that Wal-Mart had notice of the hazardous condition.

### III. Analysis

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc), *cert. denied*, 498 U.S. 1109 (1991); *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587-88; *Nguyen v. CNA Corp.,* 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 850 (4th Cir. 1990); *Ross*, 759 F.2d at 364; *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980). In other words, the nonmoving party is entitled to have "'the credibility of her evidence as forecast assumed.'" *Miller*, 913 F.2d at 1087 (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). However, when a moving party supports its motion with affidavits or depositions, the

nonmoving party cannot rest on mere allegations, but must set forth specific facts in response showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248-50.

Federal courts sitting in diversity, as here, must apply the choice of law provisions of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, Virginia is the forum state. In Virginia, liability for tort depends upon the law of the place of injury. *See Lachman v. Pa. Greyhound Lines Inc.*, 160 F.2d 496, 500 (4th Cir. 1947). Since Mrs. Harris was injured at a Wal-Mart in Bristol, Virginia, Virginia law is controlling.

The motion for judgment in this case purports to contain a cause of action against Wal-Mart for negligence. However, the defendants argue that because Wal-Mart had neither actual nor constructive notice of the hazardous condition, there is no triable issue as to negligence, and they are entitled to summary judgment as a matter of law. (Wal-Mart's Memorandum In Support Of Motion For Summary Judgment, ("Wal-Mart's Brief"), at 7-11, (Docket Item No. 33), and Childress's Motion at 1.)

Under Virginia law, the rules applicable to slip-and-fall cases are well-settled. *See Winn-Dixie Stores, Inc., v. Parker*, 396 S.E.2d 649, 650 (Va. 1990) (citing *Colonial Stores, Inc. v. Pulley*, 125 S.E.2d 188 (Va. 1962). A person is an invitee when the landowner has extended an express or implied invitation to the visitor, and the visitor enters pursuant to the invitation. *See Bauer v. Harn*, 286 S.E.2d 192, 194-

-7-

95 (Va. 1982). As such, Mrs. Harris was an invitee at Wal-Mart, and Wal-Mart owed her a duty of ordinary care and prudence. *See Shiflett v. M. Timberlake, Inc.,* 137 S.E.2d 908, 911-12 (Va. 1964). In discharging this duty, a landowner is required to have the premises in a reasonably safe condition for its visitors and to warn them of any unsafe condition that is known, or by the use of ordinary care, should be known to the landowner. *See Fobbs v. Webb Bldg. Ltd. P'ship*, 349 S.E.2d 355, 357 (Va. 1986) Open and obvious dangers that are patent to a reasonable person exercising ordinary care for her own safety do not require a warning. *See Trimyer v. Norfolk Tallow Co.*, 66 S.E.2d 441, 444 (Va. 1951).

However, the duty of ordinary care and prudence does not make a landowner an insurer of the safety of its customers. *See W.T. Grant Co. v. Webb*, S.E. 465, 466 (Va. 1936) (quoting *Turner v. Corneal*, 159 S.E. 72, 73 (Va. 1931)). In the absence of any evidence tending to show that a landowner or his servants or agents knew, or should have known by the exercise of reasonable diligence, of the defect or unsafe condition, the landowner will not be liable to a customer for injuries caused by some defect or unsafe condition in the premises. *See Safeway Stores, Inc. v. Tolson*, 121 S.E.2d 751, 753 (Va. 1961). It is the plaintiff's responsibility to introduce such evidence of the landowner's actual or constructive knowledge of a defective condition on the premises to establish her prima facie case of negligence. *See Roll 'R' Way Rinks, Inc. v. Smith*, 237 S.E.2d 157, 161 (Va. 1977). A plaintiff proves constructive notice of a condition by showing that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition. *See Grim v. Rahe*, 434 S.E.2d 888, 890 (Va. 1993). If a plaintiff is unable to show when a defect occurred on the premises, she has not made out a

prima facie case for constructive notice. *See Grim*, 434 S.E.2d at 890.

It then follows that to ascertain whether there is a genuine issue of material fact as to Mrs. Harris's negligence claim, the court must evaluate the evidence presented on Wal-Mart's actual or constructive notice of the hazardous condition. The court finds that no genuine issue of material fact exists as to whether Wal-Mart had actual notice of the hazardous condition. Plaintiff introduced no evidence that any employee of Wal-Mart knew of the presence of ice in the parking lot. To the contrary, the affidavits of Fuller and Cunningham introduced by Wal-Mart indicate that Wal-Mart received no complaints of ice in the parking lot that day nor had any employee learned of any similar incidents. Fuller and Cunningham, both store managers at the time, also deny any personal knowledge of ice in the parking lot. Therefore, if Mrs. Harris's claim is to withstand the defendants' motions, this court must find a genuine issue of material fact as to Wal-Mart's constructive knowledge.

To restate the law, in order to make out a prima facie case of constructive notice, Mrs. Harris must prove that the defect was noticeable and had existed for a sufficient length of time to charge Wal-Mart with notice of its defective condition. Mrs. Harris submits that Wal-Mart's actual notice of snow in the parking lot the day before, combined with its failure to take any steps to ensure the continued clarity of the parking lot, placed Wal-Mart on constructive notice as to the potential for ice formations in its parking lot. (Plaintiff's Brief at 7-8.)

Mrs. Harris principally relies on the case of *Wynne v. Spainhour*, 205 S.E.2d

-9-

Case 1:05-cv-00017-GMW-PMS   Document 42   Filed 02/06/06   Page 9 of 13   Pageid#: 265

634 (Va. 1974), in her contention that Wal-Mart's actions were insufficient as a matter of law. In particular, Mrs. Harris argues that *Wynne* stands for the proposition that merely clearing parking lots of snow without further inspection in following days is insufficient to fulfill a landowner's duty of ordinary care and prudence to its invitees. However, this court does not find that *Wynne* stands for such a proposition and further finds that *Wynne* is factually dissimilar from the present case. In *Wynne*, the defendant had actual notice of the presence of ice in his parking lot. *See Wynne*, 205 S.E.2d at 635. The plaintiff had fallen on a patch of ice in defendant's parking several days after a heavy snowfall. *See Wynne*, 205 S.E.2d at 634-35. The defendant had scraped his parking lot the day after the snow with a tractor and blade, but the days following the snowfall had remained below freezing. *See Wynne,* 205 S.E.2d at 635. Consequently, patches of ice remained in the parking lot, and the defendant treated the spots twice daily with rock salt. *See Wynne*, 205 S.E.2d at 635. The court in *Wynne* held that plaintiff's evidence was insufficient as a matter of law to find defendant negligent in that the defendant had done all that ordinary care required to maintain his premises in a reasonably safe condition. *See Wynne*, 205 S.E.2d at 635. The court also held that the defendant had no duty to warn of the presence of the icy spots because they were open and obvious. *See Wynne*, 205 S.E.2d at 635.

While the court agrees with Mrs. Harris that a landowner cannot simply remove snow from his parking lot and discharge a continuing obligation to keep his premises in a safe condition, *Wynne* does not set forth a uniform procedure that all landowners must follow. The *Wynne* court simply found that the defendant's actions were not negligent under the circumstances. In *Wynne*, the defendant knew that

-10-

patches of ice remained, whereas in this case, Wal-Mart did not. In this case, Childress had completely removed snow from the Wal-Mart parking lot, and an entire day following the snowfall passed, with temperatures in the 50s, with no complaints of ice nor any reports of similar incidents. Furthermore, *Wynne* does not stand for the proposition that Wal-Mart had constructive notice of ice in its parking lot simply because of snowfall the prior day. Nor does the *Wynne* opinion place an obligation on Wal-Mart to personally inspect its parking lot in the days following the snowfall.

Mrs. Harris also urges the court to infer that the ice, upon which Harris slipped, formed when the accumulations of snow that Childress left behind near the light poles melted, causing run-offs of moisture, which then later froze . But as mentioned earlier, in ruling on a motion for summary judgment, the court cannot rely on mere allegations. Mrs. Harris introduced no evidence to support her theory on how this ice formed. As Wal-Mart argues, the ice could just as likely have formed from snow falling from another customer's parked car, a spilled drink or oil on the ground. (Wal-Mart's Motion at 10.) Furthermore, Mr. Harris stated that no liquid surrounded the patch of ice, which Mrs. Harris slipped upon. This fact significantly contradicts the theory that Mrs. Harris advances. If the ice did, indeed, form from a run-off from the accumulated piles of snow, a trail of moisture would most likely lead to the patch. No such evidence has been produced. Before a question of fact may be submitted to a jury, the evidence must be "sufficient to take the question out of the realm of mere conjecture, or specuations and into the realm of legitimate inference." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545 (Va. 2003) (quoting *Beale v. Jones*, 171 S.E.2d 851, 853 (Va. 1970)). Since Mrs. Harris introduced no evidence as to the

-11-

origin of the ice, she cannot show the length of time that it existed. Kestner's affidavit, although asserting the presence of ice in the parking lot, reveals nothing about the origin or the length of time the ice existed prior to Mrs. Harris's fall. Without evidence on the length of time the ice existed, Mrs. Harris is unable to prove that the condition existed for a sufficient length of time to charge Wal-Mart with constructive notice of it. In the absence of evidence of actual notice or constructive notice, this court finds that Mrs. Harris failed to make out her prima facie case of negligence. Therefore, this court finds that no genuine issue of material fact exists as to Mrs. Harris's negligence claim. That being the case, I find no need to address Childress's Motion on its merits.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Genuine issues of material fact do not exist as to the plaintiff's negligence claim, and the defendant should be granted summary judgment as a matter of law on this claim.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant Wal-Mart's Motion, (Docket Item No. 33), and enter summary judgment in its favor on Mrs. Harris's negligence claim and that the court dismiss Wal-Mart's claim against Childress as moot.

-12-

Case 1:05-cv-00017-GMW-PMS   Document 42   Filed 02/06/06   Page 12 of 13   Pageid#: 268

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. §636(b)(1)(C)(West 1993 & Supp. 2005):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

DATED: February 6, 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE